**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL J. LISKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 1991 |
| | ) | |
| COOK COUNTY SHERIFF | ) | Chief Judge Rubén Castillo |
| THOMAS DART and COOK | ) | |
| COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael J. Liska brings this action against Cook County Sheriff Thomas Dart and Cook County (collectively, "Defendants") alleging violations of 42 U.S.C. § 1983, as well as state law claims of false imprisonment and intentional infliction of emotional distress. Presently before the Court is Defendants' motion to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part.

### RELEVANT FACTS

Liska is a resident of Cicero in Cook County, Illinois. (R. 35, Second Am. Compl. ¶ 2.) From approximately January 10, 2012, through March 16, 2012, Liska was held under home confinement while awaiting a court date for a charge of violating of a protective order. (*Id.* ¶ 7.) Under the terms of his home confinement, Liska was required to remain within his residence and was subject to remote monitoring by the Cook County Sheriff's Department (the "Sheriff's Department") through the use of an ankle monitor. (*Id.* ¶¶ 8-9.) The ankle monitor was connected by a wireless signal to a cell-box in Liska's home, (*id.* ¶ 9); if Liska left his home, the

signal between the ankle monitor and the cell-box would break and the Sheriff's Department would receive a call informing it that Liska had violated the terms of his home confinement, (*id.* ¶ 10).

Liska alleges that during the term of his home confinement, the monitoring system in his home malfunctioned repeatedly. (*Id.* ¶ 14.) Between January 10, 2012, and March 16, 2012, the cell-box placed numerous calls to the Sheriff's Department indicating that Liska had left his home. (*Id.*) As a result, Sheriff's Deputies called and visited Liska's home and threatened to incarcerate him for violating the terms of his home confinement on numerous occasions. (*Id.* ¶¶ 35-36.) Liska alleges that he, in fact, never left his home other than for approved court appearances and medical appointments, (*id.* ¶¶ 14, 33), and that the numerous calls to the Sheriff's Department were false alarms resulting from system malfunctions, (*id.* ¶ 14).

Liska reported the malfunctions to the Sheriff's Department numerous times, (*id.* ¶¶ 15, 30), and the system equipment in his home was repaired or replaced at least three times due to malfunctions, (*id.* ¶ 19). The repaired and replaced equipment, however, continued to malfunction and send false signals. (*Id.* ¶ 20.) Liska alleges that the type and brand of cell-box that was used in his home was prone to malfunctions and false signals and that this problem affected many other home detainees as well. (*Id.* ¶¶ 12, 16.) Liska alleges that the Sheriff's Department and Sheriff Dart continued to use the system in Liska's home even though they were aware of the widespread issues with the system and knew that it consistently malfunctioned. (*Id.* ¶¶ 13-21.)

Liska feared that the false signals would cause the Sheriff's Department to accuse him of violating the terms of his home confinement, so he began filming himself while at home in order to protect himself against such accusations. (*Id.* ¶ 23.) Liska informed the Sheriff's Department

that he possessed videos of himself at home when the cell-box reported him away and offered to show the Sheriff's Department the videos to prove that he had not violated his confinement. (*Id.* ¶ 26.)

On March 16, 2012, Liska's monitoring device system again malfunctioned and sent a false signal to the Sheriff's Department indicating that Liska had left his home. (*Id.* ¶ 37.) Sheriff's Deputies came to Liska's home that afternoon and informed him that he had violated the terms of his home confinement. (*Id.* ¶ 38.) Liska explained to the Deputies that he had not left his home and had video to prove it. (*Id.* ¶ 40.) Nonetheless, the Deputies handcuffed Liska and took him to the Cook County Jail. (*Id.* ¶¶ 39, 41.) Liska spent the next twelve nights incarcerated in the Cook County Jail. (*Id.* ¶ 43.)

Liska alleges that when he arrived at the Cook County Jail, a Sheriff's Deputy told him that someone would come to see him to discuss the circumstances of his alleged violation of the terms of his home confinement. (*Id.* ¶ 42.) The Sheriff's Department failed, however, to send anyone to discuss this matter with Liska. (*Id.* ¶ 44.) Liska alleges that while incarcerated, he was denied prescription medications for high-blood pressure and pain in his shoulder. (*Id.* ¶ 46.) Instead, he was given medication for withdrawal symptoms associated with heroin addiction. (*Id.* ¶ 47.) Liska alleges that he suffered extreme pain and discomfort as a result of the lack of proper medication. (*Id.* ¶ 48.) Liska also alleges that he experienced acute intestinal distress and was unable to sleep as a result of the indignities and fear his incarceration caused. (*Id.* ¶ 49.)

On March 27, 2012, Liska appeared in court on the charge of violating a protective order. (*Id.* ¶ 50.) Liska alleges that he pleaded guilty to the charge of violating a protective order in order to be released from the Cook County Jail, and that were he not incarcerated at the time, he would have defended himself against the charge. (*Id.* ¶¶ 50-52.) After he pleaded guilty, Liska

was released from jail. (*Id.* ¶ 52.) Liska alleges that he continues to have nightmares and suffers from severe emotional distress resulting from his incarceration at the Cook County Jail. (*Id.* ¶ 53.)

## PROCEDURAL HISTORY

Liska initiated this action on March 14, 2013, by filing a three-count complaint against Sheriff Dart, the Sheriff's Department, and unknown Sheriff's Deputies. (R. 1, Compl.) On May 2, 2013, Defendants moved to dismiss the complaint against Sheriff Dart and the unknown Sheriff's Deputies for failure to state a claim, and to dismiss the Sheriff's Department as a "non-suable entity." (R. 8, Defs.' First Mot. Dismiss.) On May 15, 2013, the Court granted Defendants' motion, dismissing the complaint without prejudice and granting Liska leave to file an amended complaint. (R. 11, Min. Entry.)

Liska filed an amended complaint on August 5, 2013, naming Sheriff Dart, the Sheriff's Department, and Cook County as defendants. (R. 18, First Am. Compl.) On December 4, 2013, Defendants moved to dismiss the amended complaint for failure to state a claim against Sheriff Dart, and to dismiss the Sheriff's Department as a "non-suable entity." (R. 31, Second Mot. Dismiss.) On December 9, 2013, the Court granted Defendants' motion, dismissing with prejudice the Sheriff's Department and granting Liska leave to file an amended complaint. (R. 34, Min. Entry.)

On January 8, 2014, Liska filed a second amended complaint against Sheriff Dart and Cook County. (R. 35, Second Am. Compl.) In Count I, Liska alleges that Defendants violated his constitutional rights by depriving him of his liberty without due process and by denying him prescription medications during the term of his incarceration. (*Id.* ¶¶ 54-63.) In Count II, Liska

alleges a state law claim for false imprisonment. (*Id.* ¶¶ 64-75.) In Count III, Liska alleges a state law claim for intentional infliction of emotional distress. (*Id.* ¶¶ 76-84.)

On January 29, 2014, Defendants moved to dismiss the second amended complaint pursuant to Rule 12(b)(6). (R. 38, Defs.' Mot.) On February 28, 2014, Liska filed a response to Defendants' motion to dismiss, (R. 44, Pl.'s Resp.), and Defendants filed a reply on March 14, 2014, (R. 45, Defs.' Reply). Defendants' motion to dismiss is presently before the Court.

## LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Id.* (quoting Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required, but the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), "the plaintiff must give enough details about

the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

## ANALYSIS

**I.  Whether Liska has sufficiently pleaded a Section 1983 claim (Count I)**

In Count I, pursuant to 42 U.S.C. § 1983, Liska alleges that Defendants violated his constitutional right by depriving him of his liberty without due process.[1] (R. 35, Second Am. Compl. ¶¶ 55-59.) Section 1983 creates a cause of action against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 does not provide substantive rights; rather, "it is a means for vindicating federal rights conferred elsewhere." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in 'life, liberty, or property' without due process of law." *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Thus, an "essential component" of a Section 1983 claim for a procedural due process violation "is a protected property or liberty interest." *Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 779-80 (7th Cir. 2008) (quoting *Minch v. City of Chi.*, 486 F.3d 294, 302 (7th Cir. 2007)).

---

[1]  In Count I, Liska also alleges that he was subjected to cruel and unusual punishment while incarcerated by being denied prescription medication. (R. 35, Second Am. Compl. ¶ 60.) Defendants' motion to dismiss does not argue that Liska has failed to state a claim of cruel and unusual punishment under Section 1983 or seek the dismissal of that claim. Accordingly, the Court will only address whether Liska has stated a claim of deprivation of liberty without due process.

### A. Whether Liska had a protected liberty interest in remaining under home confinement rather than in jail

Defendants argue that Liska's Section 1983 claim should be dismissed because as a pretrial detainee, Liska did not have a liberty interest in remaining under home confinement rather than in jail. (R. 38, Defs.' Mot. at 6-8.) Specifically, Defendants argue that removing Liska from home confinement to jail was not a sufficiently large reduction in freedom to be classified as a deprivation of liberty and amounted to no more than a transfer from one confined setting to another. (*Id.* at 6-9.)

In *Sandin v. Conner*, the Supreme Court recognized that while "prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." 515 U.S. 472, 485 (1995) (internal citations and quotation marks omitted). On that basis, the Court held that a prisoner's liberty interest in a less restrictive setting of confinement is protected by the Due Process Clause only when the new setting would impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. However, pretrial detainees—"persons who have been charged with a crime but who have not yet been tried on the charge"—enjoy greater due process protections against transfers to more restrictive settings of confinement than ordinary prisoners do. *Bell v. Wolfish*, 441 U.S. 520, 523 (1979); *see also Sandin*, 515 U.S. at 484-85 (distinguishing the rights of pretrial detainees as explained in *Bell* from the rights of the incarcerated prisoners at issue in *Sandin*). In *Bell*, the Supreme Court held that transferring a pretrial detainee to a more restrictive setting of confinement requires due process when "there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of

7

that purpose." *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999) (citing *Bell*, 441 U.S. at 538); *see also Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) ("A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard."). On the other hand, no due process is required when transferring a pretrial detainee to a more restrictive setting of confinement for "managerial reasons" rather than punitive reasons. *Higgs*, 286 F.3d at 438 (citing *Bell*, 441 U.S. at 535-41).

While *Bell* protects pretrial detainees against punitive transfers from one jail setting to another, neither the Supreme Court nor the Seventh Circuit have yet ruled on what due process protections are owed to a pretrial detainee under home confinement. Nevertheless, a detainee's rights relating to transfers to more restrictive settings of confinement are surely greater with regards to a transfer from a non-jail setting to jail than from one jail setting to another. *See Young v. Harper*, 520 U.S. 143, 147-53 (1997) (due process required to reincarcerate a preparolee who had been released from prison and placed on the Preparole Conditional Supervision Program); *Morrissey v. Brewer*, 408 U.S. 471, 481-83 (1972) (due process required to revoke parole and transfer parolee back into prison). In *Paige v. Hudson*, the Seventh Circuit held that transferring a probationer from home detention to jail was "a sufficiently large incremental reduction in freedom to be classified as a deprivation of liberty under the *Sandin* doctrine" and thus trigger the right to due process of law. 341 F.3d 642, 643 (7th Cir. 2003). The Seventh Circuit explained that:

> The difference between being confined in a jail and being confined to one's home is much greater than the difference between being a member of the general prison population and an inmate of a prison's segregation wing, the sort of difference that *Sandin* refused to characterize as the difference between having liberty and being deprived of it.

*Id.* at 643-44. Although the *Paige* court did not elaborate on what those differences are, the Sixth Circuit, in similarly finding that home confinement is different "in kind, not degree" from a prison setting, explained that "[a] prison cot is not the same as a bed, a cell not the same as a home, from every vantage point: privacy, companionship, comfort." *Ortega v. U.S. Immigration & Customs Enforcement*, 737 F.3d 435, 439 (6th Cir. 2013). These same differences constitute a large reduction in freedom, regardless of whether the transferred individual is a probationer, a parolee, or a pretrial detainee.

Here, Liska was a pretrial detainee on home confinement. (R. 35, Second Am. Compl. ¶ 7.) Defendants argue that Liska's rights as a pretrial detainee were more like those of a prisoner than those of a probationer. (R. 38, Defs.' Mot. at 7-8.) Citing *Domka v. Portage County*, Defendants emphasize that the Seventh Circuit has not yet addressed "the precise question of whether a prisoner (pretrial or otherwise) has a liberty interest in being held on electronic monitoring home detention as opposed to being housed in a correctional setting." (*Id.* at 7); *Domka*, 523 F.3d at 781 ("[W]e save for another day the narrow question of whether a prisoner—as opposed to a probationer, parolee or pre-parolee—has a liberty interest in a home detention program."). While the Seventh Circuit has not yet addressed the question of whether a prisoner has a liberty interest in home confinement, other circuit courts and district courts have considered the question and have answered it in the affirmative. *See Ortega*, 737 F.3d at 439 (finding that transferring a prisoner "from home confinement to prison confinement . . . amounts to a sufficiently severe change in conditions to implicate due process"); *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 890 (1st Cir. 2010) (finding that prisoners had a liberty interest in an electronic supervision program because it "was sufficiently similar to traditional parole . . . to merit protection under the Due Process Clause"); *McBride v. Cahoone*, 820 F. Supp. 2d 623, 631

9

(E.D. Pa. 2011) (holding that a prisoner had a protected interest in home confinement and stating that courts "readily acknowledge the existence of a constitutionally-significant difference between living *at home*, even with restrictions, and serving a sentence in *institutional confinement*"). Regardless, it is unnecessary for the Court to resolve the extent of the rights of prisoners on home confinement because Defendants' argument that Liska should be treated like a prisoner is contrary to Supreme Court precedent. *Bell* and *Sandin* establish that pretrial detainees and convicted prisoners do not share the same set of rights and pretrial detainees receive greater due process protections. *See Sandin*, 515 U.S. at 484-85; *Bell*, 441 U.S. at 535 ("under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law").

The deprivation of liberty Liska suffered by being transferred from home confinement to jail is greater than the deprivations of liberty at issue in *Sandin* and *Bell*, where the transfers were simply from one setting of incarceration to a more restrictive setting. Thus, at a minimum, Liska should have been afforded the same due process protections against punitive transfers as pretrial detainees who are incarcerated. Although *Morrissey*, *Young*, and *Paige* are not exactly analogous to Liska's deprivation of liberty as a pretrial detainee on home confinement, this Court finds that his deprivation of liberty is similar to that suffered by the parolees, preparolees, and probationers in those cases. Therefore, this Court holds that as a pretrial detainee on home confinement, Liska's liberty interest in remaining under home confinement was protected by the right to due process of law.

### B. Whether Liska's due process rights were violated

Having found a liberty interest in home confinement, the Court must now determine whether Liska's due process rights were violated. Defendants do not contest Liska's allegation

that he did not receive process. Liska's allegation that no one discussed with him the circumstances of his alleged violation of the terms of his home confinement or his incarceration is sufficient to establish a lack of process. (R. 35, Second Am. Compl. ¶ 42-44); *see Higgs*, 286 F.3d at 438 (due process requires "notice and an opportunity to be heard" when placing pretrial detainee in segregation as punishment (citing *Rapier*, 172 F.3d at 1004-05; *Mitchell v. Dupnik*, 75 F.3d 517, 524-25 (9th Cir. 1996))); *cf. Holly v. Woolfolk*, 415 F.3d 678, 680-81 (7th Cir. 2005) (no due process violation for a pretrial detainee moved from one prison setting to another because he was given a hearing within 48 hours). The Court need not determine exactly what process was due to Liska; it is sufficient to say that *some* process was required. *See Ortega*, 737 F.3d at 439. Because Liska received no process whatsoever, the Court concludes that Liska did not receive sufficient due process when he was transferred from home confinement to jail.

Citing *Bell*, Defendants argue that there was no due process violation because Liska does not allege that his transfer from home confinement to jail was done for punitive reasons. (R. 38, Defs.' Mot. at 8-9.) As discussed above, *Bell* establishes that officials may transfer pretrial detainees between settings of incarceration without due process only for non-punitive reasons, such as effective management of a facility or ease of ensuring that a detainee shows up for trial. *Bell*, 441 U.S. at 540. Although Liska does not expressly allege that the transfer was punitive, he does allege that on "March 16, 2012, Cook County Sheriff's Deputies came to [his] home and told him that he had violated the terms of his home confinement," (R. 35, Second Am. Compl. ¶ 38), handcuffed him and took him into custody, (*id.* ¶ 39), and imprisoned him in the Cook County Jail, (*id.* ¶ 41). A reasonable inference from these allegations is that he was transferred to jail as a punishment for violating the terms of his home confinement. Because the Court must draw all reasonable inferences in Liska's favor, the Court finds that Liska sufficiently alleges

11

that he was transferred to jail for punitive reasons. Thus, Liska was entitled to due process. *Bell*, 441 U.S. at 538-39. Furthermore, because *Paige* and *Ortega* establish that home confinement is a protected liberty interest, Liska was entitled to due process of law, regardless of whether he was transferred for punitive reasons. *See Paige*, 341 F.3d at 643-44; *Ortega*, 737 F.3d at 439.

Accordingly, the Court finds that Liska has sufficiently pleaded that he was entitled to due process relating to his transfer from home confinement to jail and that his due process rights were violated.

### C.     Whether Liska's Section 1983 claim is barred

Defendants argue in their reply brief that, pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), Liska is barred from asserting a claim under Section 1983 because his claim cannot succeed without calling into question the validity of his guilty plea on March 27, 2012 to the charge of violating a protective order. (R. 45, Defs.' Reply at 2-3.) "[I]t is well-established that arguments raised for the first time in [a] reply brief are waived." *Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011) (citing *United States v. Dabney*, 498 F.3d 455, 460 (7th Cir. 2007); *United States v. Blaylock*, 413 F.3d 616, 619 (7th Cir. 2005)). Therefore, Defendants have waived this argument.[2]

---

[2] Defendants argue that they only raise the issue in reply because Liska asserted in his response brief that he was forced to plead guilty in order to be released from jail. (R. 45, Defs.' Reply at 2 n.1.) Liska made the same assertion several times in his complaint, however, giving Defendants ample notice of the allegation. (R. 35, Second Am. Compl. ¶¶ 7, 50-52, 74.) Defendants also argue that they only recently became aware of the supporting case they cite, *Ippolito v. Justice Serv. Div.*, No. 14-1079, 2014 WL 1562897 (10th Cir. Apr. 21, 2014), after their motion to dismiss was filed on January 29, 2014. (R. 45, Defs.' Reply at 2 n.1.) This argument similarly lacks merit because *Ippolito* does not introduce any new applications of *Heck*, but rather relies on a previous Tenth Circuit case decided in 2009 applying *Heck* to a civil claim involving pretrial detention. *See Ippolito*, 2014 WL 1562897, at *1 (citing *Cohen v. Clemens*, 321 F. App'x 739, 742 (10th Cir. 2009) (unpublished)).

Even if they had not waived it, Defendants' argument fails because *Heck* does not bar

Liska's recovery. "*Heck* holds that before a § 1983 plaintiff may recover damages for alleged

harm 'caused by actions whose unlawfulness would render a conviction or sentence invalid,' the

plaintiff must first prove that his conviction or sentence has been reversed, expunged, or called

into question by the grant of a petition for habeas corpus." *VanGilder v. Baker*, 435 F.3d 689,

691 (7th Cir. 2006) (quoting *Heck*, 512 U.S. at 486-87). To determine whether *Heck* bars a

claim for damages, a court "must analyze the relationship between the plaintiff's § 1983 claim

and the charge on which he was convicted." *Id.* If a "judgment in favor of the plaintiff would

necessarily imply the invalidity of his conviction . . . the complaint must be dismissed unless the

plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*,

512 U.S. at 487. However, "if the district court determines that the plaintiff's action, even if

successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the

plaintiff, the action should be allowed to proceed." *Id.*

Here, if Liska is successful in his Section 1983 claim by proving that Defendants

deprived him of a protected liberty interest without due process, that would not invalidate or cast

doubt on his guilty plea to the charge of violating a protective order; Liska's allegation that he

only pleaded guilty to the charge against him in order to be released from jail is neither necessary

nor relevant towards his ability to prove his Section 1983 claim against Defendants. By

comparison, in the case Defendants cite in support of their argument, the plaintiff's complaint

was barred by *Heck* because while he was in jail after being removed from pretrial release, he

had filed a petition for habeas relief, which was denied. *Ippolito*, 2014 WL 1562897, at *1. The

plaintiff's potential success on his Section 1983 claim would have implied the invalidity of the

denial of his habeas petition because the habeas denial meant that his detention was lawful while

13

his Section 1983 claim asserted that his detention was unlawful. *Id.* Here, however, Liska's guilty plea to violating a protective order does not imply anything about whether his transfer to jail without due process was lawful. Accordingly, Liska's Section 1983 claim is not barred by *Heck.*

## II.    Whether Liska alleges sufficient personal involvement by Sheriff Dart to bring a Section 1983 claim against him in his individual capacity

Defendants argue that Liska's Section 1983 claim against Sheriff Dart should be dismissed because Liska does not sufficiently allege that Sheriff Dart was personally involved in the deprivation of Liska's rights. (R. 38, Defs.' Mot. at 3-4.) Liska argues that Sheriff Dart can be held personally liable because he knew or should have known about the malfunctions in the monitoring system, yet turned a blind eye towards the conduct of his Department and allowed Liska to be incarcerated based on the false signals. (R. 44, Pl.'s Resp. at 8-10.)

A plaintiff may bring a Section 1983 claim against a government actor in the actor's official capacity or in his individual capacity. *See Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). A defendant cannot be personally liable for a section 1983 claim "under a theory of *respondeat superior.*" *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citing *Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988)). To state a claim for individual liability under Section 1983, a plaintiff must allege that the defendant was "personally responsible for the deprivation of a constitutional right" because "he directed the conduct causing the constitutional violation, or [] it occurred with his knowledge or consent." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651-52 (7th Cir. 2001)). "While the plaintiff need not allege the defendant's 'direct participation,' he must demonstrate that the defendant 'acquiesced in some demonstrable way in the alleged constitutional violation.'" *Foster v. Costello*, No. 13 C 3066, 2014 WL 1876247, at *6 (N.D. Ill.

14

May 9, 2014) (quoting *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003)). In other words, supervisors may held be liable under Section 1983 if they "know about the unconstitutional conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones*, 856 F.2d at 992).

Here, Liska alleges that Sherriff Dart was responsible for implementing the cell-box system used in Liska's home and that Sherriff Dart "was aware of the wide spread issues with the type and brand of cell-box system affixed to Mr. Liska, and many other home-detainees." (R. 35, Second Am. Compl. ¶¶ 12-13.) Liska alleges that Sheriff Dart "knew or should have known of the malfunctions" of the monitoring system in his home. (*Id.* ¶¶ 17, 21.) Additionally, Liska alleges that "Sheriff Dart allowed [his] incarceration in the Cook County Department of Corrections despite knowledge of the numerous false alarms registered by the cell-box system." (*Id.* ¶ 13). Liska's allegations clearly state that Sheriff Dart knew of the system malfunctions. Although Liska's allegation that Sheriff Dart "allowed" his incarceration is less clear, the Court finds that at this stage of the pleadings it is reasonable to infer that by "allowing" Liska's incarceration, Sheriff Dart either had knowledge of the incarceration and approved it or turned a blind eye towards it. *See Sivard v. Pulaski Cnty.*, 959 F.2d 662, 668 (7th Cir. 1992) (holding that an allegation that Sheriff "knew of [plaintiff's] wrongful detention and continued to detain him in spite of that knowledge . . . is sufficient to state a cause of action under § 1983 for a public official's personal involvement in an unconstitutional deprivation of due process."); *Fox v. Tomczak*, No. 04 C 7309, 2006 WL 1157466, at *3 (N.D. Ill. Apr. 26, 2006) (same). Thus, the Court concludes that Liska has sufficiently pleaded that Sherriff Dart was personally responsible

15

for the alleged deprivation to maintain Section 1983 liability against him in his individual capacity.

## III.    Whether Sheriff Dart is protected by qualified immunity

Defendants argue that even if Sheriff Dart was personally involved in the alleged deprivation of Liska's rights, he is protected by qualified immunity because the right he allegedly violated was not "clearly established" at the time. (R. 38, Defs.' Mot. at 9-10.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As an initial matter, the Seventh Circuit has noted that "a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). "Because an immunity defense usually depends on the facts of the case," and because plaintiffs are "not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity," dismissal at the pleading stage is typically inappropriate. *Id.* at 651-52 (quoting *Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)). However, courts have been admonished to resolve qualified immunity issues "at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see also Jacobs*, 215 F3d at 765 n.3 ("[C]ourts have been admonished that qualified immunity is the ability to be free from suit, not merely a defense from liability, and that, therefore, the question of immunity should be decided at the earliest possible stage. [The Seventh Circuit] has held that resolution of this issue may be appropriate as early as dismissal under Rule 12(b)(6)." (internal citations omitted)).

In determining whether qualified immunity applies, a court considers "(1) whether the plaintiff's allegations make out a deprivation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925-26 (7th Cir. 2011) (citing *Pearson*, 555 U.S. at 232). Because the Court has already determined that Liska has alleged a deprivation of a protected liberty interest without due process, the remaining issue for the Court to decide is whether the right was clearly established.

A plaintiff can show that a right was clearly established "by showing that there is 'a clearly analogous case establishing a right to be free from the specific conduct at issue' or that 'the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (quoting *Smith v. City of Chi.*, 242 F.3d 737, 742 (7th Cir. 2001)). Officials can be "on notice that their conduct violates established law even in the absence of earlier cases involving fundamentally similar or materially similar facts." *Currie v. Chhabra*, 728 F.3d 626, 632 (7th Cir. 2013) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (internal alterations and quotation marks omitted)); *see also Nabozny v. Podlesny*, 92 F.3d 446, 456 (7th Cir. 1996) ("Under the doctrine of qualified immunity, liability is not predicated upon the existence of a prior case that is directly on point."). If no case exists that is directly on point, the Court must examine "all relevant case law in order to determine 'whether there was such a clear trend in the case law that [it] can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time.'" *Estate of Escobedo v. Bender*, 600 F.3d 770, 781 (7th Cir. 2010) (quoting *Jacobs*, 215 F.3d at 766); *see also Alvarado*, 267 F.3d at 652 ("Although the petitioner does not need to point to a case identical to his own, he must show that, 'in light of pre-existing

17

law,' a reasonable defendant would have known that his actions were unlawful." (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))).

Here, at the time of the alleged deprivation of Liska's rights, there was no established caselaw regarding whether a pretrial detainee has a protected interest in home confinement. *Paige*, *Morrissey*, and *Young*, however, had been decided and established that probationers, parolees, and preparolees have a protected liberty interest in home confinement. Although these cases are not factually identical, they are relevant because they demonstrate a "trend in the case law" recognizing due process protections for individuals on home detention. *See Estate of Escobedo*, 600 F.3d at 781. More importantly, *Bell* clearly established that officials cannot transfer pretrial detainees to more restrictive settings of confinement for punitive reasons without due process. *Bell*, 441 U.S. at 523. In light of *Bell*, it is logical to conclude that a reasonable official would have known that he could not transfer a pretrial detainee from home detention to jail, which is undoubtedly a more restrictive setting, for punitive reasons without affording that pretrial trainee due process protections. Thus, a reasonable official would have known that removing Liska from home detention and transferring him to jail to spend the remaining time until his court appearance, without giving him due process, was unlawful unless it was for non-punitive reasons. No reasonable officer would have believed that Liska had fewer due process rights while on home confinement than he would while under institutional confinement. The Court thus concludes that Liska's right not to be transferred to a more restrictive confinement setting without due process for punitive reasons was clearly established. Defendants even acknowledge in their brief that under the *Bell* standard, if Liska was transferred for punitive reasons, they would have violated his clearly established right. (R. 38, Defs.' Mot. at 9.) Given

that Liska's complaint sufficiently allows the Court to infer that his transfer was punitive, the Court finds that Sheriff Dart is not protected by qualified immunity.[3]

Because whether Liska's transfer was for punitive reasons is a factual issue that must eventually be supported by more than mere allegation and inference, however, Sheriff Dart might successfully invoke qualified immunity at a later stage in this litigation. *See Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 733-34 (7th Cir. 2013) (in some cases "a definitive decision on the issue [of qualified immunity] cannot be had without further factual development"). Facts revealed in discovery may cast the qualified immunity issue in a different light, and Defendants may reassert their qualified immunity defense on summary judgment. Accordingly, the Court will not dismiss Liska's Section 1983 claim against Sheriff Dart on the basis of qualified immunity at this time.

## IV. Whether Liska has sufficiently pleaded a *Monell* claim against Cook County

Defendants argue that Liska's Section 1983 claim should be dismissed against Sheriff Dart in his official capacity because Liska does not sufficiently allege that Sheriff Dart was responsible for a policy, practice, or custom which caused the alleged deprivation. (R. 38, Defs.' Mot. at 4-5.) "[A]n official capacity suit is another way of pleading an action against an entity of which the officer is an agent." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). Thus, Liska's claim against Sheriff Dart in his official capacity is the same as naming Cook County as a Defendant, which Liska has also done. *See, e.g., Carver v. Sheriff of LaSalle Cnty.*, 324 F.3d 947, 948 (7th Cir. 2003)

---

[3] The Court need not address whether it was clearly established that Liska could not be transferred to a more restrictive confinement setting without due process for *any* reason. Because the Court has inferred from the facts alleged in the complaint that Liska's transfer was punitive, the fact that it is clearly established that a pretrial detainee cannot be transferred for punitive reasons without due process is enough to deny qualified immunity at this stage.

(holding that "a county in Illinois is a necessary party in any suit seeking damages from an independently elected officer (sheriff, assessor clerk of court, and so on) in an official capacity"); *see also Crockwell v. Dart*, No. 13 C 4880, 2013 WL 6796788, at *2 (N.D. Ill. Dec. 23, 2013) ("Plaintiff's official-capacity allegations against Defendant Dart are in essence a suit against Cook County.").

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a plaintiff seeking to hold a municipality liable for a Section 1983 violation must show: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004). Defendants argue that Liska's allegations are conclusory and insufficient to establish *Monell* liability because he fails to allege additional examples of wrongdoing beyond his own case, does not describe "how his case was the result of a policy, practice, or custom," and "does not provide any factual allegation to support his claim that the problems were widespread." (R. 38, Defs.' Mot. at 5.) Liska argues that his complaint sufficiently alleges "a widespread practice of wrongfully incarcerating home-detainees based on malfunctioning cell-box monitoring systems, without due process of law." (R. 44, Pl.'s Resp. at 10-11.)

A plaintiff alleging a widespread practice must plead facts that show "that there is a true municipal policy at issue, not a random event. If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). The Seventh Circuit has not adopted "any bright-line rules defining a 'widespread custom or practice,'" and

"there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009). In order to survive a motion to dismiss, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the City maintained a policy, custom, or practice" that caused the violation of the plaintiff's constitutional rights. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (internal citation, alteration, and quotation marks omitted); *see also Falk v. Perez*, 973 F. Supp. 2d 850, 864 (N.D. Ill. 2013) (holding that "bare allegations of a policy or custom" are not sufficient to satisfy the showing of a widespread practice).

Liska alleges that the Sheriff's Department maintains a widespread practice of using faulty monitoring systems on home detainees. (R. 35, Second Am. Compl. ¶¶ 12-13, 16.) Liska fails to allege, however, that there is a widespread practice of incarcerating home detainees on the basis of false signals. In fact, Liska does not even allege that another home detainee was similarly incarcerated. The only allegation in the complaint that comes close to alleging a practice of incarcerating home detainees is his allegation that "Defendants' act of incarcerating [him] without first investigating the basis for the alleged violation demonstrates that the Defendants' customs and practices with respect to incarcerating citizens based on false signals show deliberate indifference to the constitutional rights of Cook County and Illinois citizens." (R. 35, Second Am. Compl. ¶ 56.) Yet this allegation does not state that others have been wrongfully incarcerated; it merely asserts that what allegedly occurred to Liska is demonstrative of a widespread custom. Liska's conclusory allegation of the existence of a widespread custom is insufficient to support a *Monell* claim. *See McCauley*, 671 F.3d at 616; *White v. City of Chi.*, No. 11 C 7802, 2014 WL 958714, at *3 (N.D. Ill. Mar. 12, 2014) (dismissing *Monell* claim against the City because "Plaintiff merely alleged that the City engaged in a 'widespread

practice' without providing any factual basis for that allegation"); *Falk*, 973 F. Supp. 2d at 864 (dismissing *Monell* claim because "[t]he single incident that Plaintiff successfully alleges is not sufficient to satisfy the requirements to plead a *Monell* claim under *Twombly* and *Iqbal*"). The Court thus finds it appropriate to dismiss Liska's claim against Cook County and Sheriff Dart in his official capacity.

Liska argues that dismissal of his *Monell* claim is inappropriate at this stage given that he has not yet had the opportunity to engage in discovery to determine whether such a policy, custom, or practice exists. (R. 44, Pl.'s Resp. at 11-12.) Nevertheless, *Twombly* "teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case." *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 802-03 (7th Cir. 2008) (citing *Twombly*, 550 U.S. 544). At this early stage of litigation, Liska has failed to plead enough facts and detail to support a claim against Cook County or against Sheriff Dart in his official capacity.

The Court thus dismisses the due process violation claim in Count I against Sheriff Dart in his official capacity and Cook County, but does not dismiss the cruel and unusual punishment claim in Count I against Defendants.[4]

---

[4] Defendants do not move the Court to dismiss Liska's claim for cruel and unusual punishment against Sheriff Dart in his official capacity. Because the Seventh Circuit discourages district courts from dismissing claims *sua sponte*, the Court will not dismiss Liska's cruel and unusual punishment claim against Sheriff Dart in his official capacity. *See Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011). The Court also will allow Liska to proceed with limited discovery – e.g. a request for admission of facts – to attempt to revive his *Monell* claim in the future. However, this may ultimately be an unsuccessful path to undertake.

## V. Whether Sheriff Dart has immunity from Liska's state law tort claims under the Illinois Tort Immunity Act

Finally, Defendants argue that Sheriff Dart is entitled to immunity from Liska's state law tort claims for false imprisonment and intentional infliction of emotional distress under Section 2-202 of the Illinois Tort Immunity Act. (R. 38, Defs.' Mot. at 10.) Section 2-202 of the Illinois Tort Immunity Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 Ill. Comp. Stat. 10/2-202. The Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 Ill. Comp. Stat. 10/1-210. Willful and wanton conduct "approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." *Loitz v. Remington Arms Co.*, 563 N.E.2d 397, 402 (Ill. 1990) (quoting *Bresland v. Ideal Roller & Graphics Co.*, 501 N.E.2d 830, 839 (Ill. App. Ct. 1st Dist. 1986)). "Whether the conduct is sufficiently willful and wanton is ordinarily a question of fact for the jury and rarely should be ruled upon as a matter of law." *Beal v. City of Chi.*, No. 04 C 2039, 2007 WL 1029364, at *10 (N.D. Ill. Mar. 30, 2007) (citing *Mostafa v. City of Hickory Hills*, 677 N.E.2d 1312, 1319 (Ill. App. Ct. 5th Dist. 1997)).

Liska alleges that Defendants intended to incarcerate him, (R. 35, Second Am. Compl. ¶ 68), knew or should have known that Liska did not violate the terms of his home confinement, (*id.* ¶ 70), and knew or should have known that there was no good faith reason to incarcerate him, (*id.* ¶ 71). Additionally, the Court has made the reasonable inference from Liska's allegations that Sheriff Dart either had knowledge of, or turned a blind eye towards Liska's incarceration. Finally, Liska has sufficiently pleaded that Defendants violated his clearly

23

established right by removing him from home confinement and placing him in jail without due process. Taken together, Liska's allegations are sufficient to create a question of fact for the jury to determine whether Sheriff Dart acted with willful and wanton conduct. *See Beal*, 2007 WL 1029364, at *10 ("For the reasons that justified denying qualified immunity . . . a reasonable juror could conclude Defendants acted willfully and wantonly or with deliberate indifference to Plaintiffs' rights."). Therefore, Sheriff Dart is not protected by immunity from Liska's state tort law claims at this time. Past the pleading stage, however, Liska cannot merely rely upon the allegations in his complaint and will need to provide sufficient evidence to demonstrate that Sheriff Dart engaged in willful and wanton conduct in order to prevail on his state law claims. *See Rhyan v. City of Waukegan*, No. 10 C 631, 2010 WL 5129736, at *3 (N.D. Ill. Dec. 9, 2010).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED in part and GRANTED in part. In particular, Liska's claim of deprivation of liberty without due process in Count I is dismissed as alleged against Sheriff Dart in his official capacity and against Cook County; his claim for cruel and unusual punishment remains. Count I survives as alleged against Sheriff Dart in his individual capacity, and Counts II and III survive. The parties are directed to fully exhaust all settlement possibilities for the remaining claims prior to the next status date, which will be held on September 4, 2014, at 9:45 a.m.

ENTERED: _____

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: July 23, 2014**

24

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL J. LISKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 1991 |
| | ) | |
| COOK COUNTY SHERIFF | ) | Chief Judge Rubén Castillo |
| THOMAS DART and COOK | ) | |
| COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Michael J. Liska brings this action against Cook County Sheriff Thomas Dart and Cook County (collectively, "Defendants") alleging violations of 42 U.S.C. § 1983, as well as state law claims of false imprisonment and intentional infliction of emotional distress. Presently before the Court is Defendants' motion to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part.

### RELEVANT FACTS

Liska is a resident of Cicero in Cook County, Illinois. (R. 35, Second Am. Compl. ¶ 2.) From approximately January 10, 2012, through March 16, 2012, Liska was held under home confinement while awaiting a court date for a charge of violating of a protective order. (*Id.* ¶ 7.) Under the terms of his home confinement, Liska was required to remain within his residence and was subject to remote monitoring by the Cook County Sheriff's Department (the "Sheriff's Department") through the use of an ankle monitor. (*Id.* ¶¶ 8-9.) The ankle monitor was connected by a wireless signal to a cell-box in Liska's home, (*id.* ¶ 9); if Liska left his home, the

signal between the ankle monitor and the cell-box would break and the Sheriff's Department would receive a call informing it that Liska had violated the terms of his home confinement, (*id.* ¶ 10).

Liska alleges that during the term of his home confinement, the monitoring system in his home malfunctioned repeatedly. (*Id.* ¶ 14.) Between January 10, 2012, and March 16, 2012, the cell-box placed numerous calls to the Sheriff's Department indicating that Liska had left his home. (*Id.*) As a result, Sheriff's Deputies called and visited Liska's home and threatened to incarcerate him for violating the terms of his home confinement on numerous occasions. (*Id.* ¶¶ 35-36.) Liska alleges that he, in fact, never left his home other than for approved court appearances and medical appointments, (*id.* ¶¶ 14, 33), and that the numerous calls to the Sheriff's Department were false alarms resulting from system malfunctions, (*id.* ¶ 14).

Liska reported the malfunctions to the Sheriff's Department numerous times, (*id.* ¶¶ 15, 30), and the system equipment in his home was repaired or replaced at least three times due to malfunctions, (*id.* ¶ 19). The repaired and replaced equipment, however, continued to malfunction and send false signals. (*Id.* ¶ 20.) Liska alleges that the type and brand of cell-box that was used in his home was prone to malfunctions and false signals and that this problem affected many other home detainees as well. (*Id.* ¶¶ 12, 16.) Liska alleges that the Sheriff's Department and Sheriff Dart continued to use the system in Liska's home even though they were aware of the widespread issues with the system and knew that it consistently malfunctioned. (*Id.* ¶¶ 13-21.)

Liska feared that the false signals would cause the Sheriff's Department to accuse him of violating the terms of his home confinement, so he began filming himself while at home in order to protect himself against such accusations. (*Id.* ¶ 23.) Liska informed the Sheriff's Department

that he possessed videos of himself at home when the cell-box reported him away and offered to show the Sheriff's Department the videos to prove that he had not violated his confinement. (*Id.* ¶ 26.)

On March 16, 2012, Liska's monitoring device system again malfunctioned and sent a false signal to the Sheriff's Department indicating that Liska had left his home. (*Id.* ¶ 37.) Sheriff's Deputies came to Liska's home that afternoon and informed him that he had violated the terms of his home confinement. (*Id.* ¶ 38.) Liska explained to the Deputies that he had not left his home and had video to prove it. (*Id.* ¶ 40.) Nonetheless, the Deputies handcuffed Liska and took him to the Cook County Jail. (*Id.* ¶¶ 39, 41.) Liska spent the next twelve nights incarcerated in the Cook County Jail. (*Id.* ¶ 43.)

Liska alleges that when he arrived at the Cook County Jail, a Sheriff's Deputy told him that someone would come to see him to discuss the circumstances of his alleged violation of the terms of his home confinement. (*Id.* ¶ 42.) The Sheriff's Department failed, however, to send anyone to discuss this matter with Liska. (*Id.* ¶ 44.) Liska alleges that while incarcerated, he was denied prescription medications for high-blood pressure and pain in his shoulder. (*Id.* ¶ 46.) Instead, he was given medication for withdrawal symptoms associated with heroin addiction. (*Id.* ¶ 47.) Liska alleges that he suffered extreme pain and discomfort as a result of the lack of proper medication. (*Id.* ¶ 48.) Liska also alleges that he experienced acute intestinal distress and was unable to sleep as a result of the indignities and fear his incarceration caused. (*Id.* ¶ 49.)

On March 27, 2012, Liska appeared in court on the charge of violating a protective order. (*Id.* ¶ 50.) Liska alleges that he pleaded guilty to the charge of violating a protective order in order to be released from the Cook County Jail, and that were he not incarcerated at the time, he would have defended himself against the charge. (*Id.* ¶¶ 50-52.) After he pleaded guilty, Liska

was released from jail. (*Id.* ¶ 52.) Liska alleges that he continues to have nightmares and suffers from severe emotional distress resulting from his incarceration at the Cook County Jail. (*Id.* ¶ 53.)

## PROCEDURAL HISTORY

Liska initiated this action on March 14, 2013, by filing a three-count complaint against Sheriff Dart, the Sheriff's Department, and unknown Sheriff's Deputies. (R. 1, Compl.) On May 2, 2013, Defendants moved to dismiss the complaint against Sheriff Dart and the unknown Sheriff's Deputies for failure to state a claim, and to dismiss the Sheriff's Department as a "non-suable entity." (R. 8, Defs.' First Mot. Dismiss.) On May 15, 2013, the Court granted Defendants' motion, dismissing the complaint without prejudice and granting Liska leave to file an amended complaint. (R. 11, Min. Entry.)

Liska filed an amended complaint on August 5, 2013, naming Sheriff Dart, the Sheriff's Department, and Cook County as defendants. (R. 18, First Am. Compl.) On December 4, 2013, Defendants moved to dismiss the amended complaint for failure to state a claim against Sheriff Dart, and to dismiss the Sheriff's Department as a "non-suable entity." (R. 31, Second Mot. Dismiss.) On December 9, 2013, the Court granted Defendants' motion, dismissing with prejudice the Sheriff's Department and granting Liska leave to file an amended complaint. (R. 34, Min. Entry.)

On January 8, 2014, Liska filed a second amended complaint against Sheriff Dart and Cook County. (R. 35, Second Am. Compl.) In Count I, Liska alleges that Defendants violated his constitutional rights by depriving him of his liberty without due process and by denying him prescription medications during the term of his incarceration. (*Id.* ¶¶ 54-63.) In Count II, Liska

alleges a state law claim for false imprisonment. (*Id.* ¶¶ 64-75.) In Count III, Liska alleges a

state law claim for intentional infliction of emotional distress. (*Id.* ¶¶ 76-84.)

On January 29, 2014, Defendants moved to dismiss the second amended complaint

pursuant to Rule 12(b)(6). (R. 38, Defs.' Mot.) On February 28, 2014, Liska filed a response to

Defendants' motion to dismiss, (R. 44, Pl.'s Resp.), and Defendants filed a reply on March 14,

2014, (R. 45, Defs.' Reply). Defendants' motion to dismiss is presently before the Court.

## LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a

claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge

No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a Rule 12(b)(6) motion to dismiss,

the Court construes the complaint in the light most favorable to the plaintiff, accepts all well-

pleaded factual allegations as true, and draws all reasonable inferences in the plaintiff's

favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Pursuant to Rule 8(a)(2), a

complaint must contain "a 'short and plain statement of the claim showing that the pleader is

entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its

basis." *Id.* (quoting Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007)). Detailed factual allegations are not required, but the complaint "must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility in this

context does not imply that a court "should decide whose version to believe, or which version is

more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, to

survive a motion to dismiss under Rule 12(b)(6), "the plaintiff must give enough details about

the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

## ANALYSIS

I.   **Whether Liska has sufficiently pleaded a Section 1983 claim (Count I)**

In Count I, pursuant to 42 U.S.C. § 1983, Liska alleges that Defendants violated his constitutional right by depriving him of his liberty without due process.[1] (R. 35, Second Am. Compl. ¶¶ 55-59.) Section 1983 creates a cause of action against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 does not provide substantive rights; rather, "it is a means for vindicating federal rights conferred elsewhere." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in 'life, liberty, or property' without due process of law." *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Thus, an "essential component" of a Section 1983 claim for a procedural due process violation "is a protected property or liberty interest." *Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 779-80 (7th Cir. 2008) (quoting *Minch v. City of Chi.*, 486 F.3d 294, 302 (7th Cir. 2007)).

---

[1] In Count I, Liska also alleges that he was subjected to cruel and unusual punishment while incarcerated by being denied prescription medication. (R. 35, Second Am. Compl. ¶ 60.) Defendants' motion to dismiss does not argue that Liska has failed to state a claim of cruel and unusual punishment under Section 1983 or seek the dismissal of that claim. Accordingly, the Court will only address whether Liska has stated a claim of deprivation of liberty without due process.

## A.  Whether Liska had a protected liberty interest in remaining under home confinement rather than in jail

Defendants argue that Liska's Section 1983 claim should be dismissed because as a pretrial detainee, Liska did not have a liberty interest in remaining under home confinement rather than in jail. (R. 38, Defs.' Mot. at 6-8.) Specifically, Defendants argue that removing Liska from home confinement to jail was not a sufficiently large reduction in freedom to be classified as a deprivation of liberty and amounted to no more than a transfer from one confined setting to another. (*Id.* at 6-9.)

In *Sandin v. Conner*, the Supreme Court recognized that while "prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." 515 U.S. 472, 485 (1995) (internal citations and quotation marks omitted). On that basis, the Court held that a prisoner's liberty interest in a less restrictive setting of confinement is protected by the Due Process Clause only when the new setting would impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. However, pretrial detainees—"persons who have been charged with a crime but who have not yet been tried on the charge"—enjoy greater due process protections against transfers to more restrictive settings of confinement than ordinary prisoners do. *Bell v. Wolfish*, 441 U.S. 520, 523 (1979); *see also Sandin*, 515 U.S. at 484-85 (distinguishing the rights of pretrial detainees as explained in *Bell* from the rights of the incarcerated prisoners at issue in *Sandin*). In *Bell*, the Supreme Court held that transferring a pretrial detainee to a more restrictive setting of confinement requires due process when "there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of

7

that purpose." *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999) (citing *Bell*, 441 U.S. at

538); *see also Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) ("A pretrial detainee cannot be

placed in segregation as a punishment for a disciplinary infraction without notice and an

opportunity to be heard."). On the other hand, no due process is required when transferring a

pretrial detainee to a more restrictive setting of confinement for "managerial reasons" rather than

punitive reasons. *Higgs*, 286 F.3d at 438 (citing *Bell*, 441 U.S. at 535-41).

While *Bell* protects pretrial detainees against punitive transfers from one jail setting to

another, neither the Supreme Court nor the Seventh Circuit have yet ruled on what due process

protections are owed to a pretrial detainee under home confinement. Nevertheless, a detainee's

rights relating to transfers to more restrictive settings of confinement are surely greater with

regards to a transfer from a non-jail setting to jail than from one jail setting to another. *See*

*Young v. Harper*, 520 U.S. 143, 147-53 (1997) (due process required to reincarcerate a

preparolee who had been released from prison and placed on the Preparole Conditional

Supervision Program); *Morrissey v. Brewer*, 408 U.S. 471, 481-83 (1972) (due process required

to revoke parole and transfer parolee back into prison). In *Paige v. Hudson*, the Seventh Circuit

held that transferring a probationer from home detention to jail was "a sufficiently large

incremental reduction in freedom to be classified as a deprivation of liberty under the *Sandin*

doctrine" and thus trigger the right to due process of law. 341 F.3d 642, 643 (7th Cir. 2003).

The Seventh Circuit explained that:

> The difference between being confined in a jail and being confined to one's home
> is much greater than the difference between being a member of the general prison
> population and an inmate of a prison's segregation wing, the sort of difference
> that *Sandin* refused to characterize as the difference between having liberty and
> being deprived of it.

8

*Id.* at 643-44.  Although the *Paige* court did not elaborate on what those differences are, the Sixth Circuit, in similarly finding that home confinement is different "in kind, not degree" from a prison setting, explained that "[a] prison cot is not the same as a bed, a cell not the same as a home, from every vantage point: privacy, companionship, comfort." *Ortega v. U.S. Immigration & Customs Enforcement*, 737 F.3d 435, 439 (6th Cir. 2013).  These same differences constitute a large reduction in freedom, regardless of whether the transferred individual is a probationer, a parolee, or a pretrial detainee.

Here, Liska was a pretrial detainee on home confinement.  (R. 35, Second Am. Compl. ¶ 7.)  Defendants argue that Liska's rights as a pretrial detainee were more like those of a prisoner than those of a probationer.  (R. 38, Defs.' Mot. at 7-8.)  Citing *Domka v. Portage County*, Defendants emphasize that the Seventh Circuit has not yet addressed "the precise question of whether a prisoner (pretrial or otherwise) has a liberty interest in being held on electronic monitoring home detention as opposed to being housed in a correctional setting." (*Id.* at 7); *Domka*, 523 F.3d at 781 ("[W]e save for another day the narrow question of whether a prisoner—as opposed to a probationer, parolee or pre-parolee—has a liberty interest in a home detention program.").  While the Seventh Circuit has not yet addressed the question of whether a prisoner has a liberty interest in home confinement, other circuit courts and district courts have considered the question and have answered it in the affirmative.  *See Ortega*, 737 F.3d at 439 (finding that transferring a prisoner "from home confinement to prison confinement . . . amounts to a sufficiently severe change in conditions to implicate due process"); *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 890 (1st Cir. 2010) (finding that prisoners had a liberty interest in an electronic supervision program because it "was sufficiently similar to traditional parole . . . to merit protection under the Due Process Clause"); *McBride v. Cahoone*, 820 F. Supp. 2d 623, 631

(E.D. Pa. 2011) (holding that a prisoner had a protected interest in home confinement and stating that courts "readily acknowledge the existence of a constitutionally-significant difference between living *at home*, even with restrictions, and serving a sentence in *institutional confinement*"). Regardless, it is unnecessary for the Court to resolve the extent of the rights of prisoners on home confinement because Defendants' argument that Liska should be treated like a prisoner is contrary to Supreme Court precedent. *Bell* and *Sandin* establish that pretrial detainees and convicted prisoners do not share the same set of rights and pretrial detainees receive greater due process protections. *See Sandin*, 515 U.S. at 484-85; *Bell*, 441 U.S. at 535 ("under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law").

The deprivation of liberty Liska suffered by being transferred from home confinement to jail is greater than the deprivations of liberty at issue in *Sandin* and *Bell*, where the transfers were simply from one setting of incarceration to a more restrictive setting. Thus, at a minimum, Liska should have been afforded the same due process protections against punitive transfers as pretrial detainees who are incarcerated. Although *Morrissey*, *Young*, and *Paige* are not exactly analogous to Liska's deprivation of liberty as a pretrial detainee on home confinement, this Court finds that his deprivation of liberty is similar to that suffered by the parolees, preparolees, and probationers in those cases. Therefore, this Court holds that as a pretrial detainee on home confinement, Liska's liberty interest in remaining under home confinement was protected by the right to due process of law.

**B.     Whether Liska's due process rights were violated**

Having found a liberty interest in home confinement, the Court must now determine whether Liska's due process rights were violated. Defendants do not contest Liska's allegation

that he did not receive process. Liska's allegation that no one discussed with him the circumstances of his alleged violation of the terms of his home confinement or his incarceration is sufficient to establish a lack of process. (R. 35, Second Am. Compl. ¶ 42-44); *see Higgs*, 286 F.3d at 438 (due process requires "notice and an opportunity to be heard" when placing pretrial detainee in segregation as punishment (citing *Rapier*, 172 F.3d at 1004-05; *Mitchell v. Dupnik*, 75 F.3d 517, 524-25 (9th Cir. 1996))); *cf. Holly v. Woolfolk*, 415 F.3d 678, 680-81 (7th Cir. 2005) (no due process violation for a pretrial detainee moved from one prison setting to another because he was given a hearing within 48 hours). The Court need not determine exactly what process was due to Liska; it is sufficient to say that *some* process was required. *See Ortega*, 737 F.3d at 439. Because Liska received no process whatsoever, the Court concludes that Liska did not receive sufficient due process when he was transferred from home confinement to jail.

Citing *Bell*, Defendants argue that there was no due process violation because Liska does not allege that his transfer from home confinement to jail was done for punitive reasons. (R. 38, Defs.' Mot. at 8-9.) As discussed above, *Bell* establishes that officials may transfer pretrial detainees between settings of incarceration without due process only for non-punitive reasons, such as effective management of a facility or ease of ensuring that a detainee shows up for trial. *Bell*, 441 U.S. at 540. Although Liska does not expressly allege that the transfer was punitive, he does allege that on "March 16, 2012, Cook County Sheriff's Deputies came to [his] home and told him that he had violated the terms of his home confinement," (R. 35, Second Am. Compl. ¶ 38), handcuffed him and took him into custody, (*id.* ¶ 39), and imprisoned him in the Cook County Jail, (*id.* ¶ 41). A reasonable inference from these allegations is that he was transferred to jail as a punishment for violating the terms of his home confinement. Because the Court must draw all reasonable inferences in Liska's favor, the Court finds that Liska sufficiently alleges

that he was transferred to jail for punitive reasons. Thus, Liska was entitled to due process. *Bell*, 441 U.S. at 538-39. Furthermore, because *Paige* and *Ortega* establish that home confinement is a protected liberty interest, Liska was entitled to due process of law, regardless of whether he was transferred for punitive reasons. *See Paige*, 341 F.3d at 643-44; *Ortega*, 737 F.3d at 439.

Accordingly, the Court finds that Liska has sufficiently pleaded that he was entitled to due process relating to his transfer from home confinement to jail and that his due process rights were violated.

**C.    Whether Liska's Section 1983 claim is barred**

Defendants argue in their reply brief that, pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), Liska is barred from asserting a claim under Section 1983 because his claim cannot succeed without calling into question the validity of his guilty plea on March 27, 2012 to the charge of violating a protective order. (R. 45, Defs.' Reply at 2-3.) "[I]t is well-established that arguments raised for the first time in [a] reply brief are waived." *Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011) (citing *United States v. Dabney*, 498 F.3d 455, 460 (7th Cir. 2007); *United States v. Blaylock*, 413 F.3d 616, 619 (7th Cir. 2005)). Therefore, Defendants have waived this argument.[2]

---

[2] Defendants argue that they only raise the issue in reply because Liska asserted in his response brief that he was forced to plead guilty in order to be released from jail. (R. 45, Defs.' Reply at 2 n.1.) Liska made the same assertion several times in his complaint, however, giving Defendants ample notice of the allegation. (R. 35, Second Am. Compl. ¶¶ 7, 50-52, 74.) Defendants also argue that they only recently became aware of the supporting case they cite, *Ippolito v. Justice Serv. Div.*, No. 14-1079, 2014 WL 1562897 (10th Cir. Apr. 21, 2014), after their motion to dismiss was filed on January 29, 2014. (R. 45, Defs.' Reply at 2 n.1.) This argument similarly lacks merit because *Ippolito* does not introduce any new applications of *Heck*, but rather relies on a previous Tenth Circuit case decided in 2009 applying *Heck* to a civil claim involving pretrial detention. *See Ippolito*, 2014 WL 1562897, at *1 (citing *Cohen v. Clemens*, 321 F. App'x 739, 742 (10th Cir. 2009) (unpublished)).

Even if they had not waived it, Defendants' argument fails because *Heck* does not bar Liska's recovery. "*Heck* holds that before a § 1983 plaintiff may recover damages for alleged harm 'caused by actions whose unlawfulness would render a conviction or sentence invalid,' the plaintiff must first prove that his conviction or sentence has been reversed, expunged, or called into question by the grant of a petition for habeas corpus." *VanGilder v. Baker*, 435 F.3d 689, 691 (7th Cir. 2006) (quoting *Heck*, 512 U.S. at 486-87). To determine whether *Heck* bars a claim for damages, a court "must analyze the relationship between the plaintiff's § 1983 claim and the charge on which he was convicted." *Id.* If a "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. However, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.*

Here, if Liska is successful in his Section 1983 claim by proving that Defendants deprived him of a protected liberty interest without due process, that would not invalidate or cast doubt on his guilty plea to the charge of violating a protective order; Liska's allegation that he only pleaded guilty to the charge against him in order to be released from jail is neither necessary nor relevant towards his ability to prove his Section 1983 claim against Defendants. By comparison, in the case Defendants cite in support of their argument, the plaintiff's complaint was barred by *Heck* because while he was in jail after being removed from pretrial release, he had filed a petition for habeas relief, which was denied. *Ippolito*, 2014 WL 1562897, at *1. The plaintiff's potential success on his Section 1983 claim would have implied the invalidity of the denial of his habeas petition because the habeas denial meant that his detention was lawful while

13

his Section 1983 claim asserted that his detention was unlawful. *Id.* Here, however, Liska's guilty plea to violating a protective order does not imply anything about whether his transfer to jail without due process was lawful. Accordingly, Liska's Section 1983 claim is not barred by *Heck.*

## II. Whether Liska alleges sufficient personal involvement by Sheriff Dart to bring a Section 1983 claim against him in his individual capacity

Defendants argue that Liska's Section 1983 claim against Sheriff Dart should be dismissed because Liska does not sufficiently allege that Sheriff Dart was personally involved in the deprivation of Liska's rights. (R. 38, Defs.' Mot. at 3-4.) Liska argues that Sheriff Dart can be held personally liable because he knew or should have known about the malfunctions in the monitoring system, yet turned a blind eye towards the conduct of his Department and allowed Liska to be incarcerated based on the false signals. (R. 44, Pl.'s Resp. at 8-10.)

A plaintiff may bring a Section 1983 claim against a government actor in the actor's official capacity or in his individual capacity. *See Hill v. Shelander,* 924 F.2d 1370, 1372 (7th Cir. 1991). A defendant cannot be personally liable for a section 1983 claim "under a theory of *respondeat superior.*" *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995) (citing *Jones v. City of Chi.,* 856 F.2d 985, 992 (7th Cir. 1988)). To state a claim for individual liability under Section 1983, a plaintiff must allege that the defendant was "personally responsible for the deprivation of a constitutional right" because "he directed the conduct causing the constitutional violation, or [] it occurred with his knowledge or consent." *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police,* 251 F.3d 612, 651-52 (7th Cir. 2001)). "While the plaintiff need not allege the defendant's 'direct participation,' he must demonstrate that the defendant 'acquiesced in some demonstrable way in the alleged constitutional violation.'" *Foster v. Costello,* No. 13 C 3066, 2014 WL 1876247, at *6 (N.D. Ill.

May 9, 2014) (quoting *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003)). In other words, supervisors may held be liable under Section 1983 if they "know about the unconstitutional conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones*, 856 F.2d at 992).

Here, Liska alleges that Sherriff Dart was responsible for implementing the cell-box system used in Liska's home and that Sherriff Dart "was aware of the wide spread issues with the type and brand of cell-box system affixed to Mr. Liska, and many other home-detainees." (R. 35, Second Am. Compl. ¶¶ 12-13.) Liska alleges that Sherriff Dart "knew or should have known of the malfunctions" of the monitoring system in his home. (*Id.* ¶¶ 17, 21.) Additionally, Liska alleges that "Sheriff Dart allowed [his] incarceration in the Cook County Department of Corrections despite knowledge of the numerous false alarms registered by the cell-box system." (*Id.* ¶ 13). Liska's allegations clearly state that Sheriff Dart knew of the system malfunctions. Although Liska's allegation that Sheriff Dart "allowed" his incarceration is less clear, the Court finds that at this stage of the pleadings it is reasonable to infer that by "allowing" Liska's incarceration, Sheriff Dart either had knowledge of the incarceration and approved it or turned a blind eye towards it. *See Sivard v. Pulaski Cnty.*, 959 F.2d 662, 668 (7th Cir. 1992) (holding that an allegation that Sheriff "knew of [plaintiff's] wrongful detention and continued to detain him in spite of that knowledge . . . is sufficient to state a cause of action under § 1983 for a public official's personal involvement in an unconstitutional deprivation of due process."); *Fox v. Tomczak*, No. 04 C 7309, 2006 WL 1157466, at *3 (N.D. Ill. Apr. 26, 2006) (same). Thus, the Court concludes that Liska has sufficiently pleaded that Sherriff Dart was personally responsible

for the alleged deprivation to maintain Section 1983 liability against him in his individual capacity.

## III.    Whether Sheriff Dart is protected by qualified immunity

Defendants argue that even if Sheriff Dart was personally involved in the alleged deprivation of Liska's rights, he is protected by qualified immunity because the right he allegedly violated was not "clearly established" at the time.  (R. 38, Defs.' Mot. at 9-10.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  As an initial matter, the Seventh Circuit has noted that "a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). "Because an immunity defense usually depends on the facts of the case," and because plaintiffs are "not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity," dismissal at the pleading stage is typically inappropriate. *Id.* at 651-52 (quoting *Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)).  However, courts have been admonished to resolve qualified immunity issues "at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see also Jacobs*, 215 F3d at 765 n.3 ("[C]ourts have been admonished that qualified immunity is the ability to be free from suit, not merely a defense from liability, and that, therefore, the question of immunity should be decided at the earliest possible stage. [The Seventh Circuit] has held that resolution of this issue may be appropriate as early as dismissal under Rule 12(b)(6)." (internal citations omitted)).

In determining whether qualified immunity applies, a court considers "(1) whether the plaintiff's allegations make out a deprivation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925-26 (7th Cir. 2011) (citing *Pearson*, 555 U.S. at 232). Because the Court has already determined that Liska has alleged a deprivation of a protected liberty interest without due process, the remaining issue for the Court to decide is whether the right was clearly established.

A plaintiff can show that a right was clearly established "by showing that there is 'a clearly analogous case establishing a right to be free from the specific conduct at issue' or that 'the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (quoting *Smith v. City of Chi.*, 242 F.3d 737, 742 (7th Cir. 2001)). Officials can be "on notice that their conduct violates established law even in the absence of earlier cases involving fundamentally similar or materially similar facts." *Currie v. Chhabra*, 728 F.3d 626, 632 (7th Cir. 2013) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (internal alterations and quotation marks omitted)); *see also Nabozny v. Podlesny*, 92 F.3d 446, 456 (7th Cir. 1996) ("Under the doctrine of qualified immunity, liability is not predicated upon the existence of a prior case that is directly on point."). If no case exists that is directly on point, the Court must examine "all relevant case law in order to determine 'whether there was such a clear trend in the case law that [it] can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time.'" *Estate of Escobedo v. Bender*, 600 F.3d 770, 781 (7th Cir. 2010) (quoting *Jacobs*, 215 F.3d at 766); *see also Alvarado*, 267 F.3d at 652 ("Although the petitioner does not need to point to a case identical to his own, he must show that, 'in light of pre-existing

law,' a reasonable defendant would have known that his actions were unlawful." (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))).

Here, at the time of the alleged deprivation of Liska's rights, there was no established caselaw regarding whether a pretrial detainee has a protected interest in home confinement. *Paige*, *Morrissey*, and *Young*, however, had been decided and established that probationers, parolees, and preparolees have a protected liberty interest in home confinement. Although these cases are not factually identical, they are relevant because they demonstrate a "trend in the case law" recognizing due process protections for individuals on home detention. *See Estate of Escobedo*, 600 F.3d at 781. More importantly, *Bell* clearly established that officials cannot transfer pretrial detainees to more restrictive settings of confinement for punitive reasons without due process. *Bell*, 441 U.S. at 523. In light of *Bell*, it is logical to conclude that a reasonable official would have known that he could not transfer a pretrial detainee from home detention to jail, which is undoubtedly a more restrictive setting, for punitive reasons without affording that pretrial trainee due process protections. Thus, a reasonable official would have known that removing Liska from home detention and transferring him to jail to spend the remaining time until his court appearance, without giving him due process, was unlawful unless it was for non-punitive reasons. No reasonable officer would have believed that Liska had fewer due process rights while on home confinement than he would while under institutional confinement. The Court thus concludes that Liska's right not to be transferred to a more restrictive confinement setting without due process for punitive reasons was clearly established. Defendants even acknowledge in their brief that under the *Bell* standard, if Liska was transferred for punitive reasons, they would have violated his clearly established right. (R. 38, Defs.' Mot. at 9.) Given

18

that Liska's complaint sufficiently allows the Court to infer that his transfer was punitive, the Court finds that Sheriff Dart is not protected by qualified immunity.[3]

Because whether Liska's transfer was for punitive reasons is a factual issue that must eventually be supported by more than mere allegation and inference, however, Sheriff Dart might successfully invoke qualified immunity at a later stage in this litigation. *See Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 733-34 (7th Cir. 2013) (in some cases "a definitive decision on the issue [of qualified immunity] cannot be had without further factual development"). Facts revealed in discovery may cast the qualified immunity issue in a different light, and Defendants may reassert their qualified immunity defense on summary judgment. Accordingly, the Court will not dismiss Liska's Section 1983 claim against Sheriff Dart on the basis of qualified immunity at this time.

## IV.    Whether Liska has sufficiently pleaded a *Monell* claim against Cook County

Defendants argue that Liska's Section 1983 claim should be dismissed against Sheriff Dart in his official capacity because Liska does not sufficiently allege that Sheriff Dart was responsible for a policy, practice, or custom which caused the alleged deprivation. (R. 38, Defs.' Mot. at 4-5.) "[A]n official capacity suit is another way of pleading an action against an entity of which the officer is an agent." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). Thus, Liska's claim against Sheriff Dart in his official capacity is the same as naming Cook County as a Defendant, which Liska has also done. *See, e.g., Carver v. Sheriff of LaSalle Cnty.*, 324 F.3d 947, 948 (7th Cir. 2003)

---

[3] The Court need not address whether it was clearly established that Liska could not be transferred to a more restrictive confinement setting without due process for *any* reason. Because the Court has inferred from the facts alleged in the complaint that Liska's transfer was punitive, the fact that it is clearly established that a pretrial detainee cannot be transferred for punitive reasons without due process is enough to deny qualified immunity at this stage.

(holding that "a county in Illinois is a necessary party in any suit seeking damages from an independently elected officer (sheriff, assessor clerk of court, and so on) in an official capacity"); *see also Crockwell v. Dart*, No. 13 C 4880, 2013 WL 6796788, at *2 (N.D. Ill. Dec. 23, 2013) ("Plaintiff's official-capacity allegations against Defendant Dart are in essence a suit against Cook County.").

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a plaintiff seeking to hold a municipality liable for a Section 1983 violation must show: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004). Defendants argue that Liska's allegations are conclusory and insufficient to establish *Monell* liability because he fails to allege additional examples of wrongdoing beyond his own case, does not describe "how his case was the result of a policy, practice, or custom," and "does not provide any factual allegation to support his claim that the problems were widespread." (R. 38, Defs.' Mot. at 5.) Liska argues that his complaint sufficiently alleges "a widespread practice of wrongfully incarcerating home-detainees based on malfunctioning cell-box monitoring systems, without due process of law." (R. 44, Pl.'s Resp. at 10-11.)

A plaintiff alleging a widespread practice must plead facts that show "that there is a true municipal policy at issue, not a random event. If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). The Seventh Circuit has not adopted "any bright-line rules defining a 'widespread custom or practice,'" and

20

"there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009). In order to survive a motion to dismiss, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the City maintained a policy, custom, or practice" that caused the violation of the plaintiff's constitutional rights. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (internal citation, alteration, and quotation marks omitted); *see also Falk v. Perez*, 973 F. Supp. 2d 850, 864 (N.D. Ill. 2013) (holding that "bare allegations of a policy or custom" are not sufficient to satisfy the showing of a widespread practice).

Liska alleges that the Sheriff's Department maintains a widespread practice of using faulty monitoring systems on home detainees. (R. 35, Second Am. Compl. ¶¶ 12-13, 16.) Liska fails to allege, however, that there is a widespread practice of incarcerating home detainees on the basis of false signals. In fact, Liska does not even allege that another home detainee was similarly incarcerated. The only allegation in the complaint that comes close to alleging a practice of incarcerating home detainees is his allegation that "Defendants' act of incarcerating [him] without first investigating the basis for the alleged violation demonstrates that the Defendants' customs and practices with respect to incarcerating citizens based on false signals show deliberate indifference to the constitutional rights of Cook County and Illinois citizens." (R. 35, Second Am. Compl. ¶ 56.) Yet this allegation does not state that others have been wrongfully incarcerated; it merely asserts that what allegedly occurred to Liska is demonstrative of a widespread custom. Liska's conclusory allegation of the existence of a widespread custom is insufficient to support a *Monell* claim. *See McCauley*, 671 F.3d at 616; *White v. City of Chi.*, No. 11 C 7802, 2014 WL 958714, at *3 (N.D. Ill. Mar. 12, 2014) (dismissing *Monell* claim against the City because "Plaintiff merely alleged that the City engaged in a 'widespread

21

practice' without providing any factual basis for that allegation"); *Falk*, 973 F. Supp. 2d at 864 (dismissing *Monell* claim because "[t]he single incident that Plaintiff successfully alleges is not sufficient to satisfy the requirements to plead a *Monell* claim under *Twombly* and *Iqbal*"). The Court thus finds it appropriate to dismiss Liska's claim against Cook County and Sheriff Dart in his official capacity.

Liska argues that dismissal of his *Monell* claim is inappropriate at this stage given that he has not yet had the opportunity to engage in discovery to determine whether such a policy, custom, or practice exists. (R. 44, Pl.'s Resp. at 11-12.) Nevertheless, *Twombly* "teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case." *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 802-03 (7th Cir. 2008) (citing *Twombly*, 550 U.S. 544). At this early stage of litigation, Liska has failed to plead enough facts and detail to support a claim against Cook County or against Sheriff Dart in his official capacity.

The Court thus dismisses the due process violation claim in Count I against Sheriff Dart in his official capacity and Cook County, but does not dismiss the cruel and unusual punishment claim in Count I against Defendants.[4]

---

[4] Defendants do not move the Court to dismiss Liska's claim for cruel and unusual punishment against Sheriff Dart in his official capacity. Because the Seventh Circuit discourages district courts from dismissing claims *sua sponte*, the Court will not dismiss Liska's cruel and unusual punishment claim against Sheriff Dart in his official capacity. *See Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011). The Court also will allow Liska to proceed with limited discovery – e.g. a request for admission of facts – to attempt to revive his *Monell* claim in the future. However, this may ultimately be an unsuccessful path to undertake.

V.    **Whether Sheriff Dart has immunity from Liska's state law tort claims under the Illinois Tort Immunity Act**

Finally, Defendants argue that Sheriff Dart is entitled to immunity from Liska's state law tort claims for false imprisonment and intentional infliction of emotional distress under Section 2-202 of the Illinois Tort Immunity Act. (R. 38, Defs.' Mot. at 10.) Section 2-202 of the Illinois Tort Immunity Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 Ill. Comp. Stat. 10/2-202. The Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 Ill. Comp. Stat. 10/1-210. Willful and wanton conduct "approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." *Loitz v. Remington Arms Co.*, 563 N.E.2d 397, 402 (Ill. 1990) (quoting *Bresland v. Ideal Roller & Graphics Co.*, 501 N.E.2d 830, 839 (Ill. App. Ct. 1st Dist. 1986)). "Whether the conduct is sufficiently willful and wanton is ordinarily a question of fact for the jury and rarely should be ruled upon as a matter of law." *Beal v. City of Chi.*, No. 04 C 2039, 2007 WL 1029364, at *10 (N.D. Ill. Mar. 30, 2007) (citing *Mostafa v. City of Hickory Hills*, 677 N.E.2d 1312, 1319 (Ill. App. Ct. 5th Dist. 1997)).

Liska alleges that Defendants intended to incarcerate him, (R. 35, Second Am. Compl. ¶ 68), knew or should have known that Liska did not violate the terms of his home confinement, (*id.* ¶ 70), and knew or should have known that there was no good faith reason to incarcerate him, (*id.* ¶ 71). Additionally, the Court has made the reasonable inference from Liska's allegations that Sheriff Dart either had knowledge of, or turned a blind eye towards Liska's incarceration. Finally, Liska has sufficiently pleaded that Defendants violated his clearly

established right by removing him from home confinement and placing him in jail without due process. Taken together, Liska's allegations are sufficient to create a question of fact for the jury to determine whether Sheriff Dart acted with willful and wanton conduct. *See Beal*, 2007 WL 1029364, at *10 ("For the reasons that justified denying qualified immunity . . . a reasonable juror could conclude Defendants acted willfully and wantonly or with deliberate indifference to Plaintiffs' rights."). Therefore, Sheriff Dart is not protected by immunity from Liska's state tort law claims at this time. Past the pleading stage, however, Liska cannot merely rely upon the allegations in his complaint and will need to provide sufficient evidence to demonstrate that Sheriff Dart engaged in willful and wanton conduct in order to prevail on his state law claims. *See Rhyan v. City of Waukegan*, No. 10 C 631, 2010 WL 5129736, at *3 (N.D. Ill. Dec. 9, 2010).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED in part and GRANTED in part. In particular, Liska's claim of deprivation of liberty without due process in Count I is dismissed as alleged against Sheriff Dart in his official capacity and against Cook County; his claim for cruel and unusual punishment remains. Count I survives as alleged against Sheriff Dart in his individual capacity, and Counts II and III survive. The parties are directed to fully exhaust all settlement possibilities for the remaining claims prior to the next status date, which will be held on September 4, 2014, at 9:45 a.m.

ENTERED: _____

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: July 23, 2014**

24